# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LARRY BANKS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 07-cv-5654 |
| ) | |
| GREG DOUGHERTY, et al., ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The case remains in its early procedural days, although it spans more than 140 docket entries and has had a shifting cast of characters. As a result of the disposition of this motion, the players will shrink in number and their roles will become better defined. Defendants Tajudeen Ibrahim ("Ibrahim"), Greg Dougherty ("Dougherty"), Farazana Husain ("Husain"), Raul Almazar ("Almazar"), Michael Waltrous ("Waltrous") the Illinois Department of Human Services ("IDHS"), and Elgin Mental Health Center ("Elgin Mental Health") (collectively "Defendants") have filed a motion to dismiss portions of Plaintiffs' fifth amended complaint [136]. Specifically, Defendants move to dismiss Counts III, IV, and VII as to Almazar and Ibrahim in their official capacities; and Defendants move to dismiss Counts I, II, V, and VI in their entirety. Defendants indicate that they have brought their motion pursuant to both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, although the Court construes both motions as having been filed pursuant to Rule 12(b)(1) (see *infra* Part III).

For the reasons set forth below, Defendants' motion [136] is granted.

## I. Background

On June 29, 2009, Plaintiffs, Larry Banks ("Banks") and Walter Carlos ("Carlos"), filed their Fifth Amended Complaint ("FAC"). The complaint alleges violations of two statutes and two constitutional provisions—the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. §§2000cc *et seq.*), the Illinois Religious Freedom Restoration Act ("IRFRA") (775 ILCS 35/1 *et seq.*), the First Amendment to the United States Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs seek injunctive relief and money damages. The complaint names Defendants IDHS, Elgin Mental Health, Ibrahim, Husain, Almazar, Dougherty, and Watrous.

Elgin Mental Health is a mental health facility, operated by IDHS, which Plaintiff alleges—and Defendants readily concede—is a subdivision of the State of Illinois. FAC ¶ 2. Elgin Mental Health services the bulk of involuntarily committed persons in the Chicago metropolitan area, known colloquially as "Chicagoland." Since at least 2006, the Center has failed to hold Jumu'ah services. These services are analogous to the Christian and Jewish prayer services. Moreover, although Elgin Mental Health pays Christians and Jews to minister to its patients, the center has refused to pay for a Muslim imam for its patients.

According to the complaint, Plaintiffs "are two practicing Muslims who were former patients at [Elgin Mental Health]. Both were denied the right to attend Jumu'ah services" and Banks was denied a "nutritionally adequate diet throughout his stay at the [c]enter, particularly during Ramadan." FAC ¶ 2. The malnourishment resulted in thirty pounds' weight loss in three weeks and Banks experienced severe hunger. Banks was a patient at Elgin Mental Health from August 2007 to June 2008. Carlos was a patient at Elgin Mental Health from July 2006 to November 2007.

All of the individual defendants are or were employed by Elgin Mental Health. Ibrahim is the Acting Hospital Administrator; Plaintiffs have sued him in his official and individual capacities. FAC ¶ 8. Almazar was the immediate predecessor to Ibrahim; he, too, is being sued in his official and individual capacities. FAC ¶ 9. Dougherty, Banks's social worker at Elgin Mental Health, is being sued only in his individual capacity. FAC ¶ 10. Also sued only in their individual capacities are Husain, who was Banks's physician at Elgin Mental Health (FAC ¶ 11), and Waltrous, who was Banks's psychologist at Elgin Mental Health.

Counts I and II of Plaintiffs' amended complaint name IDHS, Elgin Mental Health, Almazar, and Ibrahim. These counts allege that the named defendants violated RLUIPA and IRFRA. Counts III and IV name Almazar and Ibrahim in their individual and official capacities; these counts allege that the conduct violated their First Amendment rights, as well as the Fourteenth Amendment's Equal Protection Clause—both of these counts are brought pursuant to 42 U.S.C. § 1983. Counts V and VI name all Defendants, alleging that they violated RLUIPA and IRFRA by failing to provide Banks with a halal diet and sufficient food to fast during Ramadan. Finally, Count VII names Almazar, Dougherty, Husain, and Watrous in their individual capacities, and names Almazar and Ibrahim in their official capacities. Count VII alleges that these Defendants violated the First Amendment to the United States Constitution by "turning a blind eye" toward Banks's repeated complaints that he was not being provided with a nutritionally adequate halal diet that allowed him to fast during Ramadan.

Plaintiffs seek a judgment declaring that Defendants have violated RLUIPA, IRFRA, the First Amendment to the United States Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs also seek money damages

3

and injunctive relief that would direct Elgin Mental Health to adopt Jumu'ah- and halal-friendly policies.

## II. Defendants' Motion

Defendants' motion to dismiss does not take issue with the merits of Plaintiffs' allegations; rather the motion contests the Court's power to adjudicate certain of Plaintiffs' claims. Defendants argue that sovereign immunity bars any suit for money damages against Almazar and Ibrahim in their official capacities, and that any need for injunctive relief with respect to these two defendants is moot. Accordingly, Defendants seek dismissal of Counts III, IV, and VII as to Defendants Almazar and Ibrahim in their official capacities. Defendants also move to dismiss Counts I, II, V, and VI, because "sovereign immunity bars Plaintiffs' RLUIPA claims for damages and declaratory relief against [all Defendants] in their official and individual capacities" and because "the need for injunctive relief * * * is moot." Def. Mot. at 2.

## III. Legal Standard for Rule 12(b)(1) Motions

Federal courts are courts of limited jurisdiction; "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). The burden of establishing jurisdiction lies with Plaintiffs. *Id.* Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim (or, indeed, an entire lawsuit) on the ground that the Court lacks subject matter jurisdiction.[1] Federal courts lack jurisdiction over moot actions. See *supra*

---

[1] With respect to their mootness argument, Defendants conceive of their motion as having been brought pursuant to Federal Rule of Civil Procedure 12(b)(6). [See 136, at 1]. A motion brought pursuant to Rule 12(b)(6) is a motion to dismiss for failure to state a claim upon which relief can be granted. In contrast, "[t]he Constitution's case-or-controversy limitation on federal judicial authority * * * underpins * * * mootness jurisprudence." *Friends of the Earth, Inc. v. Laidlaw Environmental Svcs., Inc.*, 528 U.S. 167, 178-80 (2000). In other words, mootness is about the Court's power to hear the case and Rule 12(b)(1) provides the proper framework for evaluating Defendants' motion. *Wisc. Right to Life, Inc. v. Schober*, 366 F.3d 485, 490-91 (7th Cir. 2004) (federal courts lack jurisdiction over moot cases).

4

note 1. The Seventh Circuit has indicated that district courts lack jurisdiction over Section 1983 actions filed against non-suable entities. *Sherman v. Community Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437, 440-41 (7th Cir. 1992); *Toledo, Peoria & W. R.R. Co. v. Illinois Department of Transportation*, 744 F.2d 1296, 1298-99 (7th Cir. 1984).[2]

In evaluating a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). In addition to the pleadings and legal arguments, the Court considers evidence extrinsic to the pleadings. *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) ("[T]he district court had not only the right, but the duty to look beyond the allegations of the complaint to determine that it had jurisdiction to hear the * * * claim.").

## IV. Analysis

### A. Count I—RLUIPA

Count I of Plaintiffs' complaint names IDHS, Elgin Mental Health, Almazar, and Ibrahim. Count I, which like the other counts incants the statutory and constitutional argot, alleges that the named defendants violated RLUIPA when they "substantially burdened" Plaintiffs' right to practice their Islamic faith by failing to provide Jumu'ah services to Muslim patients. FAC ¶ 47. Defendants seek dismissal of this count in its entirety. The Court agrees that Count I must be dismissed.

---

[2] Other circuits explicitly have held that whether an entity is a "person" within the meaning of Section 1983 is a waivable affirmative defense. See, *e.g.*, *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1105-04 (D.C. Cir. 2005) (citing *Bolden v. Southeastern Penn. Transp. Auth.*, 953 F.2d 48, 53 (3d Cir. 1991) (en banc)). The different characterizations among the circuits appear to be based on different readings of the Supreme Court's decision in *Will*. In any event, the Seventh Circuit has spoken to this question, and the inter-circuit disharmony would not affect the outcome in this case.

Defendants' argument relies primarily on the Eleventh Amendment to the United States Constitution, as well as a bit of statutory interpretation. First, the constitutional work: the Eleventh Amendment restricts the jurisdiction of federal courts. "The Judicial power of the United States shall not be construed to extend to any suit * * * commenced or prosecuted against one of the United States by Citizens of another State * * *." U.S. Const. amend. XI. The Supreme Court, in a line of cases dating back to *Hans v. Louisiana*, has held that Eleventh Amendment immunity is broader than its text. Although not mandated by the plain language of the amendment (134 U.S. 1, 10 (1890)), the doctrine of sovereign immunity that is embodied by the amendment applies to cases that are brought by a citizen against his *own* state (*id.* at 11 (stating that a contrary holding would produce a similar "shock" as that which resulted from *Chisholm v. Georgia* and led to the ratification of the Eleventh Amendment)). The doctrine's breadth, though called into question from time to time (see, *e.g.*, *Welch v. Texas Dept. of Highways & Pub. Transp.*, 483 U.S. 468, 496 (1987) (Scalia, J., concurring)) and subject to occasional oscillations (*Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989) (congressional abrogation via Commerce Clause), overruled by *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996)), has been reaffirmed.

> [W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty; and that a State will therefore not be subject to suit in federal court unless it has consented to suit, either expressly or in the 'plan of convention.'

*Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991) (Scalia, J.) (citations omitted).

Sovereign immunity is properly invoked by state subdivisions where a lawsuit against that entity is "no different than suing a state itself" (*Will v. Michigan Dept. of State Police*, 491

U.S. 58, 71 (1989)), as with official capacity suits. What matters is the identity of the real party in interest—that is, the party on the hook for any ultimate judgment. The bar applies whether or not the state is named as a party. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); see also *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (noting that in an individual capacity suit, the estate would be substituted in the event the defendant died, but that the state official's successor in office would be substituted in an official capacity suit).

Plaintiffs have not contested the point that sovereign immunity *generally* acts as a bar to damages against IDHS. See *Velasco v. Ill. Dept. of Human Svcs.*, 246 F.3d 1010, 1016 (7th Cir. 2001) (ADA suit against IDHS barred by Eleventh Amendment). Likewise, Plaintiffs concede that Elgin Mental Health is "a state-run institution, charged with caring for mentally-ill individuals. It is a sub-division of, and funded by, [IDHS]." Pl. Resp. at 2. Plaintiff has not contested that the State of Illinois would be forced to draw on funds from its fisc in order to pay any judgment. Plaintiff's lack of opposition appears to be appropriate. See 20 ILCS 1705/4(a) (executive and administrative control of Elgin Mental Health vested in IDHS); IDHS, *Elgin Mental Health Center—[General Revenue Fund]: FY09 Budget* (providing a line-by-line breakdown of Elgin Mental Health's Budget), http://www.dhs.state.il.us/page.aspx?item=36224. See also *Asuquo Esang v. State of Illinois & Elgin Mental Health Center*, 07-cv-3540, [86] (N.D. Ill. Nov. 20, 2008) (Gottschall, J.) (granting motion to dismiss Elgin Mental Health on Eleventh Amendment immunity grounds); *Johnson v. Elgin Mental Health Center*, 08-cv-1042, [35] (N.D. Ill. Nov. 12, 2008) (Coar, J.) (same). Consistent with the foregoing teachings, Plaintiffs do not take issue with the general applicability of sovereign immunity to actions against IDHS, Elgin

Mental Health, or its employees (when sued in their official capacities). Therefore, unless a sovereign-immunity exception applies, the actions against these defendants must be dismissed for want of jurisdiction.

One exception to sovereign immunity's general bar is waiver. Plaintiffs argue that the State has waived its immunity pursuant to RLUIPA by accepting federal funds. See also 42 U.S.C. §§ 2000cc-1(a), (b)(1) (government may not impose a "substantial burden" on a prisoners' religious exercise "in a program or activity that receives Federal financial assistance"). However, and as Plaintiffs acknowledge in seeking to preserve the issue for appeal, the Seventh Circuit's decision in *Nelson v. Miller* leaves no room for argument about waiver in this case. In *Nelson*, the Seventh Circuit held that state acceptance of funds under RLUIPA did not waive sovereign immunity such that official capacity suits against prison officials are permitted. 570 F.3d 868, 883-86 (7th Cir. 2009) (official capacity suits barred under sovereign immunity analysis). The Seventh Circuit's holding aligned the circuit with the majority in what has, in the past year, become a lopsided circuit split: the Fourth, Fifth, Sixth, and Eighth Circuits, too, have held that the language of RLUIPA was not sufficiently clear to tie acceptance of funds to waiver of sovereign immunity. *Madison v. Virginia*, 474 F.3d 118, 132 (4th Cir. 2006); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 330-31 (5th Cir. 2009); *Cardinal v. Metrish*, 564 F.3d 794, 800-801 (6th Cir. 2009); *Van Wyhe v. Reisch*, 581 F.3d 639, 653-54 (8th Cir. 2009). Only the Eleventh Circuit has reached a contrary conclusion. *Smith v. Allen*, 502 F.3d 1255, 1270-71 (11th Cir. 2007). Although *Sossamon*, the Fifth Circuit case, is the subject of a petition for certiorari, and the Supreme Court recently called for the views of the Solicitor General on hearing the case, there is clear circuit precedent and this Court is bound to apply it. Thus, the

Court dismisses the RLUIPA claims for money damages against IDHS, Elgin Mental Health, and the official capacity suits against Ibrahim and Almazar.

That still leaves the individual capacity suits against Ibrahim and Almazar. The Seventh Circuit decided this issue, too, in the *Nelson* case. Analyzing RLUIPA under the constitution's Spending Clause and then invoking the constitutional avoidance canon, the Seventh Circuit held as a matter of statutory interpretation that RLUIPA does not allow individual capacity suits. 570 F.3d at 889. Therefore, the individual capacity suits for money damages also must be dismissed.

Alas, there is more analysis to be done, because Plaintiffs seek equitable relief in addition to money damages. Sovereign immunity generally will not bar a claim for equitable relief (see *Ex parte Young*, 209 U.S. 123, 159-60 (1908) ("The state has no power to impart to [a state official] any immunity from responsibility to the supreme authority of the United States.")), and Plaintiffs seek to enjoin Defendants from engaging in future unconstitutional activity. The problem for Plaintiffs is that there is no live case or controversy, a requisite to a court's jurisdiction. In order for the Court to maintain jurisdiction over a case, the parties must have a requisite stake in the outcome (standing) at the outset of the case, and they must maintain that stake throughout all phases of the litigation. See, *e.g.*, *Davis v. Federal Election Comm'n*, 128 S. Ct. 2759, 2768 (2008); *Wisc. Right to Life, Inc. v. Schober*, 366 F.3d 485, 491 (7th Cir. 2004) (observing that "[m]ootness is often described as the doctrine of standing set in a time frame"). If the requisite stake in the litigation is not maintained, then there is no live controversy and the action becomes moot.

In this case, Plaintiffs are no longer housed at Elgin Mental Health, a strong indication that the action is moot. *Cf. Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008) (RLUIPA action rendered moot by prisoner's release from prison). As of the time the motion was filed, Banks

was detained at the Cook County Jail and awaiting his trial; Carlos was found not guilty of his charges and, like Banks, no longer resides at Elgin Mental Health. FAC ¶¶ 18-19. Thus, the case is moot unless an exception applies. Plaintiffs say that an exception does apply because it is not "absolutely clear, absent [an] injunction, that the allegedly wrongful behavior could not reasonably be expected to recur." Pl. Resp. at 6 (quoting *Vitek v. Jones*, 445 U.S. 480, 487 (1980)). And Plaintiffs correctly note that Defendants generally bear a heavy burden in showing that an action is moot, although that admonition usually arises in cases dealing with voluntary cessation—which by its nature may be altered at a defendant's whim. See, *e.g.*, *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 999 (7th Cir. 2002). Here, Plaintiffs situation arguably involves a case that is "capable of repetition yet evading review." See also *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911); *Honig v. Doe*, 484 U.S. 305, 318 (1988) (jurisdiction if there is a "reasonable likelihood" that that complained of deprivation will recur). That is essentially what Plaintiffs argue, although they focus their argument on the capable-of-repetition component rather than the evading-review component.

In order for the capable-of-repetition-yet-evading-review exception to apply, two conditions must be satisfied: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration [of the constitutional violation]; and (2) there is a *reasonable expectation* that the same complaining party will be subject to the same action again." *Davis*, 128 S. Ct. at 2769 (emphasis added) (quotation marks and citations omitted). The Court agrees with Defendants that Plaintiffs offer only speculation about whether they will, at some point in the future, be subject to the same alleged deprivations. As to Carlos, the analysis is easy—he has been found not guilty and no longer is in control of the State. Although Plaintiffs have attached studies showing that recidivism rates for the mentally ill are high and

that more than 60% of individuals with severe and persistent mental illness will be readmitted to a mental hospital, there are multiple flaws in Plaintiffs' argument. First, the argument conflates mental illness with competency to stand trial, but these terms are not coextensive: it is possible to be competent and suffer from a mental illness. *Cf. Lynch v. Overholser*, 369 U.S. 705, 719-20 (1962) (discussing a provision of the D.C. Code that allowed for commitment of those who were of unsound mind but who were competent to stand trial); *Patterson v. Dretke*, 370 F.3d 480, 484-85 (5th Cir. 2004) (deferring to a state-court determination that a defendant was not incompetent although he was "mentally ill and express[ed] * * * delusional belief[s]").

Second, the data on the number of prisoners with mental illnesses should not be read for more than they are worth. The fact that a majority of mentally ill inmates have committed a prior crime does not support the conclusion that a majority of mentally ill, former arrestees *will* commit crimes in the future. That is a well-known, if often stumbled-upon, logical flaw: what matters is the probability that a mentally ill person with the plaintiff's symptoms will be re-incarcerated—not the probability that an incarcerated person is mentally ill. *Cf.*, *e.g.*, Leonard Mlodinow, THE DRUNKARD'S WALK: HOW RANDOMNESS RULES OUR LIVES 40 (2008) (discussing "relevant probability"). Third, Carlos was found not guilty, so Plaintiffs' speculation is compounded because Carlos would have to be arrested for another crime before his competence to stand trial ever could be in play. Of course, even if Carlos were arrested, then (1) he would have to be found incompetent to stand trial and then (2) sent to Elgin Mental Health.[3]

---

[3] Although the parties have not submitted briefs to the Court on this issue, the Court takes judicial notice of the fact that there is at least one other facility that is used by the State of Illinois when a prisoner is unfit to stand trial, and by statute the state court has considerable discretion in the choice of facilities. See, *e.g.*, *Purifoy v. Kelley*, 2009 WL 535947, *1 (S.D. Ill. March 4, 2009) (Chester Mental Health Center); 725 ILCS 5/104-17(b) ("[T]he court may order [the defendant] placed in the custody of any other appropriate public or private mental health facility or treatment program which as agreed to provide treatment to the defendant."). That would seem to compound the speculation because no mention has

In sum, it is all conjecture with respect to Carlos: the Court concludes that his request for an injunction has been rendered moot by his exoneration.

As to Banks, too, the Court determines that the controversy is moot. In *Nelson*, the Seventh Circuit emphasized that even in the voluntary cessation context, there must be "some cognizable danger of recurrent violation, something more than mere possibility." 570 F.3d at 882 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Plaintiffs have not presented the Court with argument about the nature of Banks's medical condition to rebut Defendants' argument that the transfer and upcoming trial has mooted the action. Instead, Plaintiffs rely for Banks on the same general statistical evidence—whose shortcomings are discussed above—as they do for Carlos.

Plaintiffs' focus on general statistical evidence distinguishes this case from *Vitek v. Jones* (445 U.S. 480 (1980)), the case on which Plaintiffs rely. In *Vitek*, a prisoner raised a procedural due process challenge to a statute allowing for inmates to be transferred from a prison to a mental hospital if a physician or psychologist determined that proper treatment was not possible in prison. When the plaintiff in that case initiated the suit, he was in a mental hospital, but by the time the case winded its way through levels of the federal judiciary, the plaintiff was back in prison. Justice White, writing for the Court, reasoned that the action was not moot. Critically, that determination was made in light of the past history of the prisoner in that case, which included a prior parole violation for failing to seek mental treatment (in accordance with the conditions of a parole), along with the prisoner's "history of mental illness" and the district court's determination that the prisoner was "in fact under threat of being [re-]transferred to the state hospital" under the challenged statute. 445 U.S. at 486-87. What is more, the Supreme

---

been made of the practices and procedures at Chester Mental Health Center, although the Court does not rely on this undeveloped information in reaching today's decision.

Court specified that it was making its mootness determination "against [the factual] background," as well as the procedural background: if the Court had declared the case moot, it would have dissolved the very injunction that prevented the state from re-transferring Jones to the mental facility. *Id.* at 487.

All of these distinctions make a difference. There is no evidence that either Banks or Carlos is mentally unfit to stand trial or that the nature of their respective conditions creates a "reasonable likelihood" (*Honig*, 484 U.S. at 318) that they will be unfit to stand trial in the future. In the case of Carlos, the case is even more speculative: he would have to be arrested for a crime, deemed unfit, and then sent back to Elgin Mental Health. Plaintiffs have submitted that, at a minimum, there is a factual issue on this point such that dismissal is not appropriate. But mootness is about the Court's jurisdiction. See *Press-Enterprise Co. v. Sup. Ct. of California for the County of Riverside*, 478 U.S. 1, 6 (1986); see also *supra* note 1. As such, Federal Rule of Civil Procedure 12(b)(1) governs and Plaintiffs were entitled to introduce factual evidence—that entitlement carried with it a burden to do so, and imposed on the Court an obligation to look beyond the pleadings. *Hay*, 312 F.3d at 879 ("[T]he district court had not only the right, but the duty to look beyond the allegations of the complaint to determine that it had jurisdiction to hear the landowners' claim."). And although Defendants' brief incorrectly stated that its motion to dismiss the action as moot was brought pursuant to Rule 12(b)(6), Plaintiffs understood otherwise: they submitted studies and correctly observed that the mootness inquiry requires the Court to determine whether there is "a reasonably likelihood that [Plaintiffs] will return to the facility where the alleged wrong occurred." Pl. Resp. at 6.

In any event, Plaintiffs would not have met their burden in this case even if Rule 12(b)(6) standards applied. As the Supreme Court recently clarified, complaints must allege sufficient

13

factual matter, taken as true, which elevate the prospect of relief above the "speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see also *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (affirming that *Twombly*'s principles, like the Federal Rules of Civil Procedure, apply to "all civil actions"). Given that Plaintiffs' complaint acknowledges that neither Banks nor Carlos is mentally unfit to stand trial (FAC ¶¶ 4-5, 19) and that Plaintiffs have not alleged that they are under any cognizable threat of returning to Elgin Mental Health, they could not meet even the more favorable Rule 12(b)(6) standards. Of course, engrafting the plausibility standard onto the jurisdictional inquiry produces an uneasy, legal malapropism of sorts; doing so merely shows that Plaintiffs were not prejudiced in this case by Defendant's invocation of the wrong standard. Because the Court concludes that Defendants have met their burden of establishing that the action is moot, the Court lacks jurisdiction over the claims against the named defendants for injunctive relief.

For the foregoing reasons, Count I of Plaintiffs' complaint is dismissed.

### B.    Count II—IRFRA

Count II names IDHS, Elgin Mental Health, Almazar, and Ibrahim. Count II alleges that the named defendants violated IRFRA when they substantially burdened Plaintiffs' right to practice their faith by repeated requests for Jumu'ah services. Defendants seek dismissal of this count as to all named Defendants, arguing that the actions are barred based on state sovereign immunity.

Under Illinois law, sovereign immunity is a statutory, rather than constitutional, creature. Article XIII, Section 4 of the Illinois Constitution abolishes sovereign immunity "[e]xcept as the General Assembly may provide by law." The Illinois General Assembly, in turn, enacted the State Law Immunity Act, which provides that the State shall not be made a defendant in any

14

Court except as provided in either the Public Labor Relations Act (not at issue here) or the Court of Claims Act. 745 ILCS 5/1. The Court of Claims Act vests exclusive jurisdiction in the Court of Claims in all actions "against the State founded upon any law of the State of Illinois." 705 ILCS 505/8(a). Thus, Illinois waives sovereign immunity only in the Court of Claims. *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002) (quoting *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992)). The question for purposes of this Court's jurisdiction, therefore, becomes whether the action is "against the State." *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990).

The disposition as to IDHS and Elgin Mental Health proves straightforward. In *Nelson*, the Seventh Circuit held that actions against the state under IRFRA must be tried in the Court of Claims, at least based on the argument presented by the plaintiff in that case. 570 F.3d at 885 (rejecting an argument that the "judicial relief" contemplated by IRFRA could not be had before the Court of Claims, which is an agency created by the Illinois legislature). Because Plaintiffs' response to Defendants' motion essentially repeats the rejected argument, Count II must be dismissed with respect to IDHS and Elgin Mental Health (and as to Almazar and Ibrahim, to the extent Plaintiffs were proceeding against them in their official capacities). If Plaintiffs wish to pursue these claims, they may do so only before the Illinois Court of Claims.

The more difficult issue arises with respect to a question that the *Nelson* Court did not address: whether federal district courts may exercise jurisdiction over individual capacity suits under IRFRA. IRFRA imposes duties on "governments," a statutory term of art that includes individuals. The act provides that a "[g]overnment may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability," unless it can satisfy a strict-scrutiny analysis. 775 ILCS 35/15. The term "government" is defined to include "a branch, department, agency, instrumentality, and official (or other person acting under color

15

of law) of the State of Illinois or a political subdivision of the State, including a home rule unit." *Id.* § 5. A prevailing plaintiff is entitled to "appropriate relief" and may also recover attorney's fees and costs. 775 ILCS 35/20.

Determining whether an action against an individual is a suit against the state turns on the issues involved and the relief sought rather than the identity of the parties listed in the case caption. *In re Lawrence M.*, 670 N.E.2d 710, 527 (Ill. 1996). An action is against the state, and hence may be brought only in the Illinois Court of Claims, when three conditions are met:

> (1) [There are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the State employment; *and* (3) * * * the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Jinkins v. Lee*, 807 N.E.2d 411, 418 (Ill. 2004) (emphasis added) (quoting *Healy*, 549 N.E.2d 1240)).

The difficulty in this case pertains to the interaction of conditions one and two of the *Healy* test. Specifically, the issue is whether a state employee may be held liable for violating a statute that applies to the employee solely by virtue of his employment. At first blush, it appears that Defendants fail the *Healy* test and sovereign immunity will not bar Plaintiffs' suit, because Plaintiffs allege that Defendants acted in a manner that violated IRFRA, and the *Healy* test uses the conjunctive "and." Thus, it would seem that sovereign immunity does not apply because there are "allegations that an agent or employee of the State acted beyond the scope of employment" (*Jinkins*, 807 N.E.2d at 418). And "[s]overeign immunity affords no protection * * * when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Healy*, 549 N.E.2d at 1247.

16

However, under Illinois Supreme Court precedent, that result does not obtain when an employee violates a statute that applies to an employee solely because of his status as an employee. See *Fritz v. Johnston*, 807 N.E.2d 461, 468-69 (Ill. 2004). In so reasoning, the Supreme Court resolved an apparent conflict between two of its earlier cases. In the first case, *Ellis v. Bd. of Governors of State Colls. & Univs.*, 466 N.E.2d 202 (Ill. 1984)), a professor filed suit against the state colleges' board of governors. The professor's complaint alleged that she had been constructively discharged from her position in contravention of a statute that provided that the board could remove professors only "for good cause." *Id.* at 204. The plaintiff contended that sovereign immunity did not apply because her suit was based on an alleged violation of a statutory right. The Illinois Supreme Court rejected Plaintiff's argument. *Id.* But that outcome, as the Illinois Supreme Court observed in *Fritz*, appeared to be at odds with the teaching in *Healy* that sovereign immunity will not apply when a plaintiff alleges that a state official "acted in violation of statutory or constitutional law or in excess of his authority." *Fritz*, 807 N.E.2d at 468-69.

In resolving the apparent tension, the Illinois Supreme Court reasoned, in effect, that when an action is brought pursuant to a statute, the source of duty analysis (part 2 of the *Healy* test) controls:

> [T]he critical question is the source of the duty the employee is alleged to have violated—and specifically, whether that duty exists solely by virtue of the defendant's state employment. The statute at issue in *Ellis* did not apply to the public as a whole. Rather, it proscribed the actions *of state employees* in operating the State Colleges and Universities System. Accordingly, even though a statute was involved, the duties allegedly breached by the Board members in *Ellis* arose solely by virtue of their state employment. *That* is the critical question.

*Fritz*, 807 N.E.2d at 469 (citations omitted). Although the court's reasoning was dicta in the case, the task of a federal court sitting in diversity is to predict the pertinent state high court's

17

ruling.  *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004).  Here, the Illinois Supreme Court has indicated that when a state employee is accused of violating a statute that applies to the employee only by virtue of his status as state employee, then sovereign immunity will bar an individual capacity suit.  *Erie R.R. Co. v. Tompkins* (304 U.S. 64 (1938)) and its progeny require the Court to accept that indication.  The duty not to substantially burden Plaintiffs' free exercise of religion was imposed only on "governments" under the statute (775 ILCS 35/15), and Almazar and Ibrahim fall into that definition solely because of their status as state employees (*id.* § 5).  Therefore, *Fritz* is directly on point.  The authorities cited by Plaintiff (see Pl. Resp. at 13) are inapposite because they involve prospective relief.  Therefore, Count II of Plaintiffs' complaint is dismissed.

### C. Counts III and IV—Section 1983

Counts III and IV are brought pursuant to 42 U.S.C. § 1983 and name Almazar and Ibrahim in their individual and official capacities.  Count III alleges that the named defendants violated Plaintiffs' First Amendment rights by paying for weekly Christian and Jewish services but not for weekly Jumu'ah services.  Count IV alleges that Defendants' conduct violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Defendants seek dismissal of the counts against the named Defendants in their official capacities, arguing that official capacity suits generally cannot be maintained against the State and that the exception that applies to injunctive relief is inapplicable in this case.

Defendant's motion is granted.  *Will v. Michigan Dept. of State Police* teaches that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71 (1989).  Of course, official capacity suits for injunctive relief are permissible because "official capacity actions for prospective relief are not treated as actions against the

18

State." *Id.* at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. at 167 n.14). But as the Court already has noted (*supra* Part IV.A), Plaintiffs' claims for injunctive relief have been rendered moot. Therefore, Counts III and IV must be dismissed as to the official capacity suits against Almazar and Ibrahim.

### D.  Count V—RLUIPA

Count V names IDHS, Elgin Mental Health, Almazar, Ibrahim, Dougherty, Husain, and Watrous. Count V alleges that the named defendants violated RLUIPA when they substantially burdened Banks's right to practice Islam by refusing to provide him with a nutritionally adequate diet that was halal and which allowed him to fast during Ramadan. Defendants seek dismissal of this count in its entirety.

In accordance with the reasoning in Part IV.A of this opinion, Defendants' motion is granted, and Count V of Plaintiffs' complaint is dismissed.

### E.  Count VI—IRFRA

Count VI names IDHS, Elgin Mental Health, Almazar, Ibrahim, Dougherty, Husain, and Watrous. Count VI alleges that Defendants violated IRFRA when they substantially burdened Banks's right to practice Islam by refusing to provide him with a nutritionally adequate diet that was halal and which allowed him to fast during Ramadan. Defendants seek dismissal of this count in its entirety.

In accordance with the reasoning in Part IV.B of this opinion, Defendants' motion is granted, and Count VI of Plaintiffs' complaint is dismissed.

### G.  Count VII—Section 1983

Count VII is brought pursuant to 42 U.S.C. § 1983 and names Almazar, Ibrahim, Dougherty, Husain, and Watrous in their individual capacities; the count also names Almazar

and Ibrahim in their official capacities. Count VII alleges that the named defendants violated the First Amendment when they substantially burdened Banks's right to practice Islam by refusing to provide him with a nutritionally adequate diet that was halal and which would have allowed him to fast during Ramadan. Defendants seek dismissal of this count against Almazar and Ibrahim in their official capacities.

In accordance with the reasoning in Part IV.C of this opinion, Defendants' motion is granted, and Count VII of Plaintiffs' complaint is dismissed as to the official capacity suits against Almazar and Ibrahim.

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss portions of Plaintiffs' fifth amended complaint [136] is granted.

Dated: February 26, 2010

_____
Robert M. Dow, Jr.
United States District Judge